IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

EDDY STANLEY HARRIS, JR.,                                                              PLAINTIFF
ADC #132946

V.                                         5:19CV00096-JM-JTK

DEMARCUS DAVIS, et al.                                                                DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the

1

District judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I. Introduction

Plaintiff Eddy Harris is a state inmate incarcerated at the Maximum Security Unit of the Arkansas Division of Correction (ADC). He filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth Amendment rights and the Americans with Disabilities Act (ADA). (Doc. No. 2) Plaintiff's ADA claim was dismissed on April 4, 2019. (Doc. No. 6)

This matter is before the Court on the Motion for Summary Judgment, Brief in Support and Statement of Facts filed by Defendants LeMarcus Davis,[1] Keith Taylor, and Lakita Patterson. (Doc. Nos. 23-25). Plaintiff filed a Response, Brief, and Statement of Facts (Doc. Nos. 30-32).

### II. Claims

Plaintiff alleged that he broke his leg while playing basketball at the Unit on July 16, 2018 and was placed in a cast and given crutches. (Doc. No. 2, p. 6) On September 26, 2018, Defendants

---

[1] Harris originally identified Davis as DeMarcus. (Doc. No. 2)

2

Taylor and Patterson escorted him by wheelchair to west isolation after Plaintiff was found guilty of failing a drug test. (Id., p. 7) Taylor told Plaintiff that Defendant Captain Davis said he could not keep his crutches while in the isolation cell, and Taylor and Patterson failed to take Plaintiff to the infirmary for a medical pre-lock up assessment. (Id.) After Plaintiff arrived at his cell, he asked Defendant Taylor to contact Defendant Davis so that Plaintiff could speak to him about the crutches. (Id.) Taylor called Davis and then left with Patterson and Plaintiff's crutches. (Id., p. 8) When Davis arrived, he told Plaintiff he could not keep the crutches because they could be used as a weapon, and that Plaintiff could use the table and walls of his cell to aid his movement. (Id.) Davis then agreed with Plaintiff that there should be rails on the walls to aid his movement but told Plaintiff he did not have time to move him to an available handicap cell. (Id.) Plaintiff alleged that Defendants Patterson and Taylor violated his rights by failing to take him to the pre-lockup assessment in the infirmary, and he alleged that non-party nurses failed to respond to his requests for pain medication. (Id., p. 9) He also alleged Davis violated his rights when he refused to move him to an available handicap cell and when he refused to allow Plaintiff to keep his crutches in his cell. (Id., p. 11)

### III.     Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d

1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A. Defendants' Motion

Defendants state that Plaintiff cannot show that they acted with deliberate indifference to his serious medical needs, and ask the Court to dismiss Plaintiff's claims against them in their individual capacities, based on qualified immunity, which protects officials who act in an objectively reasonable manner.[2]  It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact.   McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005).   Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most

---

[2]  Plaintiff sued Defendants in their individual capacities only. (Doc. No. 2, p. 2)

favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful.   Pearson v. Callahan, 555 U.S. 223, 232 (2009).[3]   Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

In support of their Motion, Defendants present their Declarations, together with Plaintiff's deposition testimony.

### 1) **Defendant Davis**

Davis stated that at the time of the incidents at issue he was employed as the acting security chief of the Unit and oversaw the security at the unit and participated in classification hearings. (Doc. No. 23-2, p. 2)   He was aware that Plaintiff used crutches at the time, and discussed with Plaintiff prior to his disciplinary hearing the possibility that he could be placed on walking punitive, which would keep Plaintiff out of the punitive isolation area. (Id.) However, he told Plaintiff that the Deputy Warden would make the final decision about that, and the classification Committee assigned Plaintiff to a cell in the west isolation area. (Id.)

Davis spoke with Erica Jackson, the Director of Nursing, concerning whether Plaintiff needed to keep his crutches while in west isolation, and she advised him that he would not need them because he could maneuver the small area without them. (Id.) Davis also spoke with a classification officer about assigning Plaintiff to a handicap cell, but was told there were no cells

---

[3]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

5

in the west isolation area with such accommodations or rails on the walls. (Id.) Davis was told that rails were removed because inmates took them off the walls and used them as weapons against correctional officers. (Id., pp. 2-3) Davis then instructed Defendants Taylor and Patterson to escort Plaintiff to the west isolation area and to take his crutches because they were not permitted because of security risks. (Id., p. 3) Davis explained all these things to Plaintiff. (Id.)

Davis also stated that general population inmates are permitted crutches because they must walk to the restroom, water fountain, and the chow hall, while Plaintiff's cell in west isolation which measured approximately 6 foot by 10 foot, contained a toilet and sink right beside the bed. (Id., p. 4) Finally, Plaintiff could use the crutches when escorted to any activities outside his cell, and they were returned to him when he was removed from west isolation. (Id., pp. 3-4)

    **2) Defendant Taylor**

Taylor held the position of sergeant at the time of the incident. (Doc. No. 23-3, p. 1) Defendant Davis instructed him, together with Defendant Patterson, to escort Plaintiff to the west isolation cell and to take his crutches. (Id., p. 2) At Plaintiff's request, Taylor called Davis to speak with Plaintiff about the crutches. (Id.) ADC policy provides that inmates segregated from general population should be evaluated by a health professional prior to placement in segregation. (Id.) Taylor stated that he did not refuse to take Plaintiff for his medical assessment, but rather forgot about it because Plaintiff was upset about not being able to keep his crutches. (Id.) Taylor also stated that Plaintiff did not say anything to him about the missed evaluation or that he needed his medication., and after they locked him in the cell, he and Patterson called the infirmary to tell them he had been moved to west isolation. (Id.)

    **3) Defendant Patterson**

Patterson was employed as a corporal at the time of the incident and escorted Plaintiff to the west isolation area in September 2018 pursuant to Defendant Davis's instructions. (Doc. No. 23-4, p. 1) Davis told her that Plaintiff could not keep his crutches and that the Director of Nursing stated that Plaintiff would not need the crutches. (Id.) Davis also instructed Patterson and Taylor to place the crutches in the control booth and to return them to Plaintiff whenever he was removed from his cell. (Id., p. 2) Patterson stated that she did not refuse to take Plaintiff for the pre-lock up medical assessment, and that Plaintiff did not say anything about needing his medication. (Id.) She also stated that she and Taylor notified the infirmary that Plaintiff had been moved to the west isolation area. (Id.)

### 4)      Plaintiff's Deposition

Plaintiff stated that he broke his leg, for the second time, in July 2018, and after he was treated at a local hospital he was housed in a one-man cell. (Doc. No. 23-1, pp. 13-15) He was provided crutches and a prescription for ibuprofen. (Id., p. 13) Prior to his disciplinary hearing in September 2018, Defendant Davis discussed with him the possibility of being placed on walking punitive because of his use of the crutches. (Id., p. 18) However, Defendants Taylor and Patterson took him to west isolation on September 26, 2018, and told him that Davis said he could not keep his crutches while there. (Id., p. 20) He became distraught thinking about being in isolation with no crutches and did not think to tell the officers to first take him to the infirmary. (Id., p. 22) After Defendants Taylor and Patterson helped him to his bed in the cell , they called Defendant Davis, who told him he could not keep the crutches because they could be used as a weapon but that he could have them when he came out of his cell for a shower. (Id., pp. 24, 26) Davis also told him that he could not move him to a handicap cell. (Id., p. 27) Plaintiff was

7

released back to general population eight days later. (Id., p. 34) Plaintiff admitted that the isolation cell contained a bed, toilet and sink and that food was delivered to him, but stated that it was cruel and unusual punishment for him to have to hop around on one leg for eight days without support. (Id., p. 34) He stated that as a result it took longer for his leg to heal and that when it did heal it was not "flush." (Id., pp. 43-45) He stated that he was able to use the crutches through December, even after the cast was removed. (Id., p. 47) He also stated that Defendants Taylor and Patterson violated ADC policy when they failed to take him to the infirmary for a pre-lock up medical assessment, and admitted that they did not refuse to take him but just forgot. (Id., pp. 36-38)

   **B**.  **Plaintiff's Response (Doc. No. 31)**

Plaintiff denies that Davis told him he spoke with the Director of Nursing or the classification officer and claims that Davis fabricated these facts. (Doc. No. 31) Plaintiff claims he was never evaluated or seen by the Director of Nursing concerning his injury. Finally, he states that Defendants Taylor and Patterson disregarded his serious medical need when they failed to abide by ADC policy and take him for a pre-lock up medical assessment. He told Davis at the time that he was violating his rights by not placing him in a handicap cell and that his incarceration placed him in danger of serious harm. (Id.)

   **C.**  **Analysis**

In order to support a claim for an Eighth Amendment violation, Plaintiff must prove that Defendants acted with deliberate indifference to a serious medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Plaintiff must show that he was "incarcerated under conditions posing a substantial risk of serious harm," and that defendants "acted with a 'sufficiently culpable state of mind.'" Kulkay v. Roy, 847 F.3d 637, 642 (8th Cir. 2017 (quoting Farmer, 511 U.S. at 834.)   Yet,

8

mere negligence or inadvertence is not sufficient to establish deliberate indifference. Kulkay, 847 F.3d at 642. In addition, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (overruled in part on other grounds).

In this case, Plaintiff provides no proof that the failure of Defendants Patterson and Taylor to take him for a pre-lockup assessment constituted deliberate indifference to his serious medical needs.   He does not allege that he complained to them that he needed his medication, and he admitted in his deposition that they all "forgot." Plaintiff also does not dispute Defendants' statements that after they placed him in the isolation cell, they notified medical personnel.   Finally, the failure to follow an ADC policy does not support a constitutional claim for relief. "[T]he mere violation of a state law or rule does not constitute a federal due process violation." Williams v. Nix, 1 F.3d 712, 717 (8th Cir. 1992).

The Court also finds that no reasonable fact finder could find that the facts alleged or shown by Plaintiff, construed in the light most favorable to him, established a violation of a constitutional or statutory right by Defendant Davis. While Plaintiff disputes that Davis **told him** he consulted with the Director of Nursing and the classification committee, he does not dispute that Davis actually did inquire as to the need for crutches or the availability of a handicap cell. Plaintiff also does not dispute that Defendant Davis did not make the decision to house Plaintiff in the west isolation cell (as opposed to placing him on walking punitive), or that ADC policy prohibits the use of crutches in those cells for security reasons.   Although the Court questions the safety of placing an inmate with a leg cast into a cell without crutches, the Court finds that Davis's failure

to permit the crutches was not sufficient to establish deliberate indifference. In addition, Plaintiff provided no verifying medical evidence to show that the placement resulted in a detrimental effect on the healing of his leg. See Beyerbach, 49 F.3d at 1326.

Defendants provided to the Court two non-Eighth Circuit cases which dealt with the failure to provide an inmate with a handicap cell without rails or crutches. In Rychwalski v. CMS, the court held that an inmate who was housed in a cell without his crutches did not describe conditions so severe to provide fair warning to Defendants that their conduct was unconstitutional. No. CIV.A. GLR-13-2082, 2014 WL 4232710 (D. MD. 2014), aff'd 599 F.App'x 491 (4th Cir. 2015) The Court noted that the inmate was placed in the cell without crutches for approximately one week and provided no proof of serious physical or psychological injury. In contrast, where an inmate with a broken ankle was not permitted crutches inside his cell and not provided access to a handicap-accessible shower, a court found that a reasonable jury could find that the inmate was housed under conditions posing a substantial risk of serious harm. Stanley v. Menard, No. 2:15-CV-87, 2016 WL 11476993 (W.D. Mich. 2016), report and recommendation adopted sub nom., Stanley v. Olsen, 2016 WL 6802895 (W.D. Mich. 2016). In that case, the court noted that the inmate encountered trouble entering and exiting the shower because he had to hop over a foot high "lip," which caused him to fall on at least one occasion. (Id., *3) The court found a triable issue of fact existed concerning whether placement in the cell without crutches and an adequate shower facility resulted in the violation of his constitutional rights. (Id., *4)

The Court finds the present case more similar to Rychwalski. Plaintiff was provided his crutches for all out-of-cell activities, including use of the shower, and did not allege difficulty in maneuvering to and from the shower area. In addition, Defendant's placement (as directed by the

10

classification committee) for eight days in a 6 foot by 10 foot cell which contained a bed, sink, and toilet, absent any allegation of injury, fails to support a constitutional claim for relief.

### IV.     Conclusion

IT IS, THEREFORE, RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. No. 23) be GRANTED, and that Plaintiff's complaint be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 4th day of February, 2020.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE